## Volkswagen of America v. Otto Durr Beteiligungs GmbH

*James R. Schadel*, for plaintiff.

*George E. Yokitis, Gerald W. Ittig*, for defendants Otto Durr Beteiligungs GmbH & Durr Industries, Inc.

*John R. Walters, Jr.*, for defendant Chicago Safety Products Company and A.J. Antunes, Inc.

*Charles Kirshner*, for additional defendants.

WETTICK, *A.J.*, January 4, 1984—The subject of this opinion and order of court is plaintiff's motion to compel defendant Otto Durr Beteiligungs GmbH (Durr) to answer plaintiff's interrogatories and to produce documents.

This action arises out of an explosion in the paint primer oven of plaintiff's automobile assembly plant in Westmoreland County, Pa., which caused property damage and stopped production for several days. Plaintiff alleges that defendants are responsible for manufacturing, installing, servicing, and repairing various components of its paint shop facility and seeks recovery of the damages sustained from the explosion on the basis of strict liability, breach of warranty, and negligence.

Durr has filed preliminary objections to plaintiff's complaint in which it contends that this court lacks in personam jurisdiction over this defendant because Durr has insufficient contacts with Pennsylvania to confer jurisdiction on its courts. Durr is a corporation organized and doing business under the laws of the Federal Republic of Germany. It alleges that it conducts no business·in the United States, that no employees or officers were present within Pennsylvania, and that its only connection with the installation, maintenance, and repair of the paint shop facility was to guarantee the financial capacity of Durr Industries, Inc. (Durr Industries), a wholly owned subsidiary which constructed the paint shop facility. Plaintiff disputes these allegations; it contends that Durr was actively involved in the construction project and that its activities included supplying many items used in the construction of the paint shop facility and sending employees to the construction site.

Through its proposed discovery, plaintiff would obtain factual information relating to Durr's activi-

ties in connection with the construction project. Plaintiff's discovery requests are made pursuant to the Pennsylvania Rules of Civil Procedure governing discovery (Pa.R.C.P. 4001-4020), and plaintiff looks solely to this court to obtain compliance with its discovery requests. Durr contends that because it is a foreign entity that has no office within the United States, any discovery which plaintiff seeks must be conducted in accordance with the provisions of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. §2555, T.I.A.S. No. 7444, 28 U.S.C. §1781 (Hague Convention), a treaty to which the United States and the Federal Republic of Germany are parties.

Under the Pennsylvania Rules of Civil Procedure governing discovery, plaintiff is entitled generally to the discovery which it seeks. Pa.R.C.P. 1028(c), 4001(a)(1), 4005 and 4009. However, its discovery requests are not in the format provided for by the Hague Convention.[1] Thus, the issue raised by Durr's objection to plaintiff's discovery requests is whether the Pennsylvania Rules of Civil Procedure governing discovery are superseded by the Hague Convention when the discovery involves a foreign

---

1. Discovery under the Hague Convention is more time-consuming and expensive and less likely to be responsive in comparison to discovery under the Pennsylvania rules. If plaintiff were to proceed under this Convention, this court would issue a letter of request directed to an appropriate official authority in the German government. Eventually, this letter would be referred to a judicial officer who would assume responsibility for conducting the questioning of the witnesses from whom the information is sought. Platto, Taking Evidence Abroad for Use in Civil Cases in the United States—a Practical Guide, 16 International Lawyer 575 (1982).

national not located within this country.[2]

For Durr to prevail; we must conclude that the Hague Convention establishes a single method for taking evidence abroad that replaces all methods utilized by the member states. Neither the language of the Convention nor the reports prepared in connection with the drafting and ratification of the Convention supports this interpretation.

No provision within the Hague Convention requires parties who seek discovery from a foreign entity to proceed under the Convention. Furthermore, Article 27 of the Convention specifically preserves the broader discovery procedures of each member state:

### "Article 27

"The provisions of the present Convention shall not prevent a Contracting State from—

(c) permitting, by internal law or practice, methods of taking evidence other than those provided for in this Convention."

The sole purpose of the Convention is to provide more effective methods of discovery in those situations in which the assistance of the courts of a second state is necessary in order to obtain testimony for proceedings in the court of the first state. The Hague Convention adopted the more restrictive discovery procedures of civil law nations in deference to their treatment of discovery as a "judicial" function which requires the involvement of a judicial officer. The adoption of these procedures does not indicate a willingness of the common law countries to suspend their discovery procedures when foreign

---

2. State courts are bound by the Hague Convention under the Supremacy Clause of the United States Constitution (Article VI, Clause 2).

entities are involved, but rather a willingness on their part to utilize civil law procedures when the assistance of a civil law foreign court is sought in order to compel discovery. See, generally, Amram, Notes and Comments, United States Ratification of the Hague Convention on the Taking of Evidence Abroad, 67 American Journal of International Law 104 (1973); Edwards, Taking of Evidence Abroad in Civil or Commercial Matters, 18 International and Comparative Law Quarterly 646 (1969).

At the recommendation of the Department of State of the United States, the 1968 session of the Hague Conference on Private International Law considered a revision and modernization of the 1954 chapter of the Hague Convention on civil procedure which dealt with obtaining evidence in a foreign country. On October 26, 1968, the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters was adopted by the Conference; on July 27, 1970, the United States signed this Convention; on February 1, 1972, President Nixon transmitted the Convention to the United States Senate; and on June 13, 1972, the Senate consented to its ratification. These dates during which the Convention was drafted, signed, and ratified are significant because by this time the philosophy of liberal discovery, as embodied in the Federal Rules of Civil Procedure governing discovery, was a fundamental precept of civil litigation within this country.

It is unlikely that the United States would approve a treaty which would take away from the citizens of this country the protections afforded by our liberal discovery rules in all litigation involving foreign entities in exchange for the minimally increased discovery procedures which the Hague Convention makes available. If the Convention

were intended to produce the drastic consequences of suspending the established discovery procedures of the courts of this country in favor of the more cumbersome and less efficient discovery procedures provided for by the Hague Convention in all cases involving foreign parties, this intention would have been articulated clearly in the Convention and discussed in detail in the documents drafted in connection with the adoption and ratification of the Convention.

President Nixon's letter of transmittal to the senate included a lengthy letter of submittal dated November 9, 1971 from the Secretary of State recommending that the United States ratify the Convention and the explanatory report on the convention by Philip W. Amram, the Rapporteur of the Commission which prepared the Convention.[3]

These documents contain no statements which suggest in any way that the Convention was intended to supplant the liberal discovery procedures of our courts when the assistance of a foreign court is not sought. Moreover, these documents continuously refer to the Convention as a set of minimum standards for discovery that can and should be liberalized through alternative procedures.

The President's letter of transmittal describes the Convention as a significant step forward in the field of international judicial cooperation because "[i]t will permit our courts and litigants to avail themselves of a number of improved and simplified procedures for the taking of evidence." In the letter of submittal of the Secretary of State, the Convention is characterized as "a major contribution to the elimination of formal and technical obstacles to se-

---

3. S. Exec. A., 92nd Cong., 2d Sess. (February 1, 1972); G.P.O. 5209 (72).

curing evidence abroad in a form that is usable in the court where the action is pending." This letter describes the Convention as being designed to "[p]reserve all more favorable and less restrictive practices arising from internal law, internal rules of procedure and bilateral or multi-lateral conventions" and further states that "[w]hat the convention does is to provide a set of minimum standards with which contracting states agree to comply." Also, the Secretary of State's concluding statement in support of his recommendation that the United States ratify the Convention emphasizes that the Convention will not interfere with our existing discovery procedures:

"A significant aspect of the Evidence Convention is the fact that although it requires little change in the present procedures in the United States it promotes changes in the direction of modern and efficient procedures, in the present practices of many other states."

The explanatory report also emphasizes that the Convention's procedural restrictions are included solely to make the Convention tolerable to those states with the more restrictive procedures for taking evidence, that the Convention is not designed to eliminate any existing procedures that are less restrictive, and that it is the hope of the Convention that the member states will not impose many of the restrictions which the Convention permits.

Finally, the Convention sets forth a very detailed set of rules for the taking of evidence abroad. If the Convention had been intended to supersede internal laws or rules of procedure in certain situations in which foreign entities were involved, it would have been necessary for the Convention to indicate the circumstances in which this would occur.

In the present case, for example, is Durr claiming that the Hague Convention supersedes local law because Durr is a German corporation, because Durr's major place of business is apparently in Germany, because Durr allegedly does no business in the United States, because the documents which plaintiff requests are apparently in German, and/or because the persons who will be answering the interrogatories on Durr's behalf reside in Germany? In deciding whether or not local law is superseded, would it make a difference if the lawsuit arose out of a transaction in which a foreign entity was doing business in Pennsylvania, if jurisdiction were not an issue, or if the foreign entity were the plaintiff? These issues would have been addressed by the Convention if its purpose were to supplant local procedures in situations in which a foreign entity was involved. Consequently, the Convention's failure to address these issues reinforces this court's conclusion that the sole purpose of the Hague Convention is to provide a mechanism for utilizing a foreign court to obtain evidence abroad and that the Convention is inapplicable when a party is not seeking the assistance of a foreign court in connection with discovery requests addressed to a foreign entity.

This same conclusion was reached in a memorandum opinion by the United States District Court for the Eastern District of Pennsylvania in Lasky v. Continental Products Corp., 569 F.Supp. 1227 (1983). In that case, the court denied the motion of a German car manufacturer (the defendant in a product liability case) for a protective order requiring that discovery be conducted in accordance with the provisions of the Hague Convention. The court concluded that the Hague Convention is permissive and not mandatory and that, therefore, the conven-

tion does not supersede the discovery provisions of the Federal Rules of Civil Procedure.

We recognize that a different result was reached by the California Courts of Appeals in the cases of Volkswagenwerk Aktiengesellschaft v. Superior Court, 123 Cal. App. 3d 840, 176 Cal. Rptr. 874 (1981) and Pierburg GmbH & Co. KG v. Superior Court, 137 Cal. App. 3d 238, 186 Cal. Rptr. 876 (1982). In these cases the courts, citing Article 27 of the Convention, agreed with this court's conclusion that the Hague Convention is not an exclusive rule of international evidence-gathering but, instead, establishes a minimum standard of international cooperation. But the courts still required a party seeking discovery of a foreign national to proceed initially under the Hague Convention as an exercise of judicial restraint based on international comity. The rationale for the ruling was that the use of common law discovery procedures could be viewed by a civil law state as an infringement upon important interests of the state.

This rationale is inconsistent with the philosophy of the Hague Convention which rejected the claim that discovery in a foreign state through procedures not available in that state would violate its judicial sovereignty. Article 21(d) of the Hague Convention provides for evidence to be taken "in the manner provided by the law applicable to the court in which the action is pending provided that such manner is not forbidden by the law of the State where the evidence is taken." Article 12 provides that the execution of a Letter of Request "may not be refused solely on the ground that under its internal law the State of execution claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not admit a right of action on it." Article 9 provides that the foreign state "will follow a request

of the requesting authority that a special method or procedure be followed, unless this is incompatible with the internal law of the State of execution or is impossible of performance by reason of its internal practice and procedure or by reason of practical difficulties." Also see the Explanatory Report of the Convention which provides:

"To be 'incompatible' with the internal law of the State of execution does not mean 'different' from the internal law. It means that there must be some constitutional inhibition or some absolute statutory prohibition. No Civil Law delegation suggested that his country had constitutional or statutory provisions which would prevent the examination of witnesses in the preparation of the transcript of the testimony 'Common Law style.' Nor did any Common Law delegation suggest that his country had constitutional or statutory provisions which would prevent a judge or an official designated by him from interrogating a witness and preparing a summary in 'Civil Law style.' . . ." (p. 23, G.P.O. 5209 (72))

We recognize that principles of international comity may bar the application of local discovery rules if such discovery would infringe upon important interests of a foreign state or require a party to engage in conduct barred by the foreign state. However, this case involves routine private litigation in which "no questions of national sovereignty or national security can be involved." Explanatory Report of the Hague Convention (p. 37).

The discovery in this case is directed to a party which allegedly did business in this country and addresses only its activities affecting a United States corporation. The discovery requests do not utilize German law or German officials. A discovery order will not compel Durr to engage in activities which violate German law. Furthermore, this discovery in-

volves important interests of this country because this is a lawsuit in which a United States corporation has invoked the protections afforded by our civil laws in litigation arising out of alleged wrongdoing occurring within this country. Because of the significant interests of this country in providing the protections afforded by our domestic laws to activities of foreign entities allegedly affecting our citizens coupled with the absence of any infringement on the vital governmental interests of Germany, there is no sound public policy basis for declining to utilize our local discovery procedures in this litigation.

For these reasons, we enter the following

## ORDER OF COURT

On this January 4, 1984, it is herby ordered that within 20 days defendant Otto Durr Beteiligungs GmbH shall provide answers or other appropriate responses to each of plaintiff's interrogatories and requests for production of documents.